**RECORD NO. 09-4278**

In The

# United States Court Of Appeals

For The Fourth Circuit

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

# CARL EDWARD DODSON,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG**

_____

## BRIEF OF APPELLANT

_____

**Elgine H. McArdle**
**MCARDLE LAW OFFICE**
**80 Twelfth Street**
**Suite 206**
**Wheeling, WV  26003**
**(304) 232-0700**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF JURISDICTION ........................................................... 1

ISSUES PRESENTED FOR REVIEW ....................................................... 2

STATEMENT OF THE CASE .................................................................... 3

STATEMENT OF FACTS .......................................................................... 6

SUMMARY OF THE ARGUMENT ......................................................... 13

ARGUMENT ............................................................................................. 15

    THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING CARL DODSON'S MOTION TO WITHDRAW HIS GUILTY PLEA ....................................................................................... 15

    STANDARD OF REVIEW ................................................................. 15

        A.    Dodson's Plea Was Neither Knowing Nor Voluntary ............. 16

        B.    Dodson Has Always And Credibly Asserted His Innocence. ............................................................................. 17

        C.    The Delay Between The Entry Of The Plea And The Motion To Withdraw The Plea Was Due To Inefective Assistance Of Counsel ............................................................ 18

        D.    Carl Dodson Was Denied Effective Assistance Of Counsel .................................................................................. 19

i

E.    Allowing Carl Dodson To Withdraw His Plea Would Not Have Resulted In Prejudice To The Government ..................... 24

F.    Allowing Carl Dodson To Withdraw His Plea Would Neither Inconvenience The Court Nor Waste Its Judicial Resources ................................................................................. 25

CONCLUSION ........................................................................................... 27

REQUEST FOR ORAL ARGUMENT ................................................... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

Johnson v. Zerbst,
    304 U.S. 458 (1938)................................................................15

United States v. DeFreitas,
    865 F.2d 80 (4th Cir.1989) .............................................12

United States v. Haley,
    784 F.2d 1218 (4th Cir.1986) .........................................12

United States v. Moore,
    931 F.2d. 245 (4th Cir. 1991) ..........................................2

United States v. Pitino,
    887 F.2d 42 (4th Cir. 1989) ..........................................14

United States v. Rios-Ortiz,
    830 F.2d 1067 (9th Cir.1987) .........................................12

United States v. Suter,
    755 F.2d 523 (7th Cir.),
    cert. denied, 471 U.S. 1103 (1985)..............................14

United States v. Ubakanma,
    215 F.3d.421 (4th Cir. 2000) .........................................14

United States v. Moore,
    931 F.2d.245 (4th Cir. 1991) ...........................13, 14, 15

**Statutes:**

18 U.S. C. § 3231 ..................................................................1

18 U.S.C. § 3742 ..................................................................1

21 U.S.C. § 841(a)(1).........................................................1, 3

iii

21 U.S.C. § 841(c)(1)................................................................1, 3

21 U.S.C. § 841(c)(2)................................................................1, 3

28 U.S.C. § 1291.......................................................................2

**Rule:**

Fed. R. Crim. P. 32(d).............................................................12

## STATEMENT OF JURISDICTION

On July 1, 2008, Carl Edward Dodson was named in counts one, two, six, eight, twelve, fourteen, sixteen, seventeen, eighteen, twenty-one, twenty-four, twenty-nine, thirty, thirty-two, thirty-four, thirty-eight, forty, forty-one, forty-two, forty-four, forty-six, forty-eight, fifty, and fifty-one of a fifty-six count indictment charging him with conspiracy to manufacture, possess with intent to distribute fifty (50) grams or more of methamphetamine and to possess and distribute listed chemicals knowing and having reasonable cause to believe that the listed chemicals will be used to manufacture methamphetamine in violation of 21 U.S.C. §§§ 841(a)(1), 841(c)(1), and 841(c)(2).  JA 14.  Because the charge constituted an offense against the United States, the district court had original jurisdiction pursuant to 18 U.S. C. § 3231.  This appeal challenges the District Court's denial of Carl Dodson's motion to withdraw his plea of guilty to count 50 of the indictment.  The United States Court of Appeals for the Fourth Circuit has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

Whether Carl Dodson should have been permitted to withdraw his guilty plea because he unequivocally demonstrated fair and just reason to do so under the six prong factors of United States v. Moore, 931 F.2d. 245 (4th Cir. 1991):

I.     Dodson's plea was neither voluntary nor knowing.

II.    Dodson has always and credibly asserted his innocence.

III.   The delay between the entry of Dodson's plea and filing the Motion to Withdraw his plea was due to his counsel's failure to return his calls and refusal to file any objections to the presentence report.

IV.   Wells Dillon's legal representation fell below an objective reasonable standard when he failed to keep his client informed of all the court proceedings or the status of his case, failed to provide his client with a timely and accurate analysis of the government's evidence, failed to make ANY investigation into the defenses presented to him by his client, refused to file any objections to the presentence report and repeatedly ignored his client's adamant insistence that he was innocent – all of which contributed to his client begrudgingly enter into a guilty plea.

V.    Granting a withdrawal of the plea would not and still will not prejudice the government.

VI.   The withdrawal will not inconvenience the Court or waste judicial resources.

2

## STATEMENT OF THE CASE

On July 1, 2008, Carl Dodson, hereinafter "Dodson" was named in twenty-four counts of a fifty-six count indictment charging him with conspiracy to manufacture, possess with intent to distribute fifty (50) grams or more of methamphetamine and to possess and distribute listed chemicals knowing and having reasonable cause to believe that the listed chemicals will be used to manufacture methamphetamine in violation of 21 U.S.C. §§§ 841(a)(1), 841(c)(1), and 841(c)(2).  JA 14.  Dodson was initially represented by George Cosenza, Esquire who discovered he had a conflict of interest and referred Dodson to Wells Dillon, Esquire, hereinafter "Dillon."  JA 183.  Dodson consulted Dillon for the first time on August 20, 2008. JA 183.

Six short weeks after Dodson first met Dillon, Dodson plead guilty to Count 50 of the indictment on October 7, 2008. JA 84-87.  No record exists of Dillon meeting Dodson face-to-face with his attorney about any matter between October 7, 2008 and his sentencing on January 21, 2009.  JA 309-315

One month after signing the plea agreement, on November 6, 2008, Dodson "expressed his dissatisfaction with Mr. Dillon" to his parole officer, Mark McKee, bringing evidence of his problems with Dillon, asserting his innocence in the case, and demonstrating that he pled guilty only because of Dillon's recommendations and was considering firing Dillon. JA 455-456.  From October through December

3

2008, Dodson also extensively contacted various attorneys and organizations, including the Office of Disciplinary Counsel on November 18, 2008, the ACLU that December, and the West Virginia Innocence Project in January voicing the same concerns. JA 427-429.

After feverishly searching for new counsel for a period of two (2) months and while retaining Dillon as his counsel, Dodson found Elgine McArdle, Esquire, ("McArdle") and consulted with her one week before his sentencing hearing. JA 166. On January 20, 2009, McArdle filed a motion to continue Dodson's sentencing which was ultimately denied by the District Court. JA 163-164. On January 21, 2009, the district court intended to proceed with a sentencing hearing however, Dodson fired Dillon and orally sought to withdraw his guilty plea. JA 163-170.

The District Court permitted Dodson to excuse Dillon and McArdle immediately assumed representation of Dillon. JA 196-198. The hearing continued on Dodson's motion to withdraw his plea. Ultimately, the Court deemed it necessary to take Dillon's testimony and continued the hearing until February 6, 2009, for the purpose of taking testimony regarding Dillon's ineffective counsel. JA 271-272.

On February 6, 2009, a seven (7) hour hearing took place wherein Dillon testified regarding his representation of Dodson. The hearing concluded on a

4

Friday evening at 10:00 p.m. when the Court made its findings and denied Dodson's motion to withdraw his guilty plea.  JA 280-500

The Court then intended to proceed to sentencing when McArdle noted that the presentence report upon which the Court intended to proceed to sentencing was not the same presentence report which had been obtained by McArdle from Dillon's file.   McArdle further noted that Dillon had never filed objections to the presentence report and that Dodson did have objections he wanted to file for the record.  JA 490-500.

McArdle filed objections to the presentence report on February 11, 2009 JA 722-765 and a presentence memorandum on February 23, 2009.  JA 502-513.

A final hearing took place on March 5, 2009, at which time Dodson's objections were heard, ruled upon, and the Court imposed a 78 month sentence upon Dodson.  JA 640.

Dodson files this appeal claiming the district court abused its discretion in denying his Motion to Withdraw his guilty plea.

## STATEMENT OF FACTS

Carl Edward Dodson ("Dodson"), thirty-eight, is from Doddridge County, Educated to 12th grade, graduated Doddridge County High School, then moved out of the county for some time to work.   Dodson and his wife have previously worked coordinating karaoke and disc jockey events for a bar that they owned. Dodson was district manager for a telecommunication company as well. At the time of the alleged crime, Dodson was a resident of Doddridge County, unemployed and on disability for Lyme disease, severe back pain, depression, and bipolar disorder. He received direction from a physician to treat his Lyme disease with an over the counter drug known as pseudoephedrine sulfate (Sudafed). JA 83

During the period of time that the bar was open, Dodson had many renovations done, including remodeling the men's bathroom, the bar itself, and stripping the hardwood floor of the bar.  JA 209-213.  Gale A. King ("King") was employed to assist with construction and cleanup efforts at the bar, and was given access to all areas of the bar so that he could freely do the needed renovations. JA 185-186.

On August 5, 2008, a search warrant was carried out by Trooper Cayton at Dodson's house and business, seizing several pieces of evidence that allegedly linked Dodson to the crime of possession or distribution with intent to produce and distribute methamphetamine, which resulted in Dodson's arrest. JA 222-225.  On

6

July 1, 2008, a 54-count indictment was filed naming Dodson on 24 counts of Conspiracy to Manufacture a Controlled Substance, Manufacture of a Controlled Substance, and Intent to Sell, Distribute, or Dispense Methamphetamine.  JA 14-71.

George Cosenza (Dodson's first attorney) simultaneously represented Dodson and Jason Holt (who had already been convicted of methamphetamine related crimes ) until one week after Dodson's arraignment on August 5, 2008.  At that time, Cosenza withdrew his representation due to a conflict of interest and recommended that Dodson hire Dillon to represent him.  While Cosenza represented both clients, Holt provided a statement to the government which implicated Dodson in the alleged occurrences, thereby providing Holt with a "better deal" and a shorter sentence.  Interestingly, Jason Holt was an individual who Dodson wanted Dillon to investigate as part of Dodson's defense.  That was never done.

Dillon began representing Dodson on August 21, 2008.  On October 8, 2008, Dodson pled guilty. JA 84-87. One month after signing the plea agreement, on November 6, 2008, Dodson "expressed his dissatisfaction with Mr. Dillon" to his parole officer, Mark McKee, bringing evidence of problems with Dillon's counsel, asserting his innocence in the case, and demonstrating that he pled guilty only because of Dillon's recommendations and was considering firing Dillon. JA 456.

Dodson brought evidence that addressed many aspects of the prosecution's argument to this meeting, evidence that Wells Dillon never investigated. JA 337-341. Dillon also failed to file a Motion to Suppress all the evidence seized from Dodson's bar and residence as the affidavit was based upon information Trooper Cayton knew to be false. (JA 722-765)

From October through December 2008, Dodson also extensively contacted various attorneys and organizations, including the Office of Disciplinary Counsel on November 18, 2008, the ACLU in December, 2008, and the West Virginia Innocence Project in January, voicing the same concerns and seeking out anyone who would assist him in asserting his innocence. JA 427-429.

After searching for new representation and while retaining Dillon as his counsel, Dodson found McArdle and consulted with her one week before his sentencing hearing. JA 166. On January 20, 2009, McArdle filed a motion to continue Dodson's sentencing which was ultimately denied by the District Court. JA 163-164. On January 21, 2009, the district court intended to proceed with a sentencing hearing however, Dodson fired Dillon and orally sought to withdraw his guilty plea. JA 163-170.

The District Court permitted Dodson to excuse Dillon and McArdle immediately assumed representation of Dillon. JA 196-198. The hearing continued on Dodson's motion to withdraw his plea. Ultimately, the Court deemed

it necessary to take Dillon's testimony and continued the hearing until February 6, 2009, for the purpose of taking testimony regarding Dillon's ineffective counsel. JA 271-272.

On February 6, 2009, a seven (7) hour hearing took place wherein Dillon testified regarding his representation of Dodson. In summary, Dillon admitted to the following:

1) He only "sometimes" does an analysis which cross references the discovery to the sentencing guidelines and in this case, he did not do it "to the detail that he normally did." JA 29-30

2) There are no notes of a guideline analysis. JA 324

3) Mr. Dodson was not sent a copy of the Defendant's version of the offense which was submitted on his behalf. JA 327

4) There is no correspondence within the file that demonstrates an explanation of the plea offer tendered by the government. JA 327-328, 331

5) He does not date his notes within his file JA 334

6) He did not find a basis for filing a Motion to Suppress JA 336

7) He did nothing to follow up on any defenses presented by the client other than interviewing his client and his client's wife in the process of preparing a witness and exhibit list. JA 336-337

8) He did not interview the mother who could verify that Dodson's dog had a rash which required treatment with Iodine. JA 337-338

9) He did not interview the dad who could verify that muriatic acid was used to clean the concrete floors at the bar. JA 338

10) He did not interview the neighbors who could verify that there was no foot traffic in and out of Dodson's house. 338

9

11)    He never interview Jason Holt whose trash was also in the dumpster behind the bar as was identified by a receipt in a trash bag with Holt's name on it.  JA  338

12)    He did not interview Cotton Greenwood who witnessed other people dumping trash into the dumpster behind the bar.  JA 338

13)    He admitted that the issue surrounding the dumpster was a crucial part of the defense in as much as it was used by more than Dodson's bar thereby making the contents therein not attributable to Dodson.  JA 339.

14)    He didn't interview any of the witnesses that Dodson provided who would verify that he was not involved with methamphetamine and indicated that "in hindsight, I wish we could have done more."  JA 340

15)    His billing records indicate that on the day he supposedly went over the plea with his client, he billed .7 hours for pretrial.  JA 342

16)    He never went over the proposed plea agreement with his client alone. It was jointly discussed.  JA  346-347

17)    His client expressed reluctance to take the plea but he didn't know why though his client had previously professed his innocence.  JA 347-348

18)    His client never changed his position that he was innocent and expressed to his attorney on December 1, 2009 that he was not happy with the plea.  JA  349

19)    While the client asked Dillon to file objections, Dillon determined that it would not be prudent and did not file the objections.  JA  352-353

The hearing concluded on a Friday evening at 10:00 p.m. when the Court made its findings and denied Dodson's motion to withdraw his guilty plea.

10

The Court then intended to proceed to sentencing when McArdle noted that the presentence report upon which the Court intended to proceed to sentencing was not the same presentence report which had been obtained by McArdle from Dillon's file. McArdle further noted that Dillon had never filed objections to the presentence report and that Dodson did have objections he wanted to file for the record. JA 490-500.

McArdle filed objections to the presentence report on February 11, 2009, and a presentence memorandum on February 23, 2009. In summary, McArdle specifically objected to the following: JA 722-764

1)     The count of conviction should read possession OR distribution.

2)     Dodson specifically objected to Trooper Cayton's version of the offense and stated there was no evidence of the presence of a meth lab either at his house or at his bar. There was no evidence that Dodson ever used his legally obtained pseudoephedrine for the manufacture of meth. There was no evidence to show that co-defendants used Dodson's pseudoephedrine for the manufacture of methamphetamine.

3)     Dodson's stated his position: He left his pseudoephedrine which he used for medicinal purposes on the counter of his bar where King was doing construction work. That was the sole basis for the 78 month sentence being sought by the government.

4)     The claim for restitution in an amount in excess of $5,000 for the disposal of everyday propane tanks used for gas grills.

A sentencing hearing took place on March 5, 2009, at which time Dodson's objections were heard, ruled upon, and the Court imposed a 78 month sentence upon Dodson.  JA 514-640

## SUMMARY OF THE ARGUMENT

The Court abused its discretion in denying Carl Dodson's motion to withdraw his plea when he presented overwhelming evidence that he received ineffective assistance of counsel, and as a result of such ineffectiveness, Dodson, an individual with no experience with the criminal justice system, unknowingly and involuntarily entered a guilty plea.

Under Fed. R. Crim. P. 32(d), a defendant does not have an absolute right to withdraw a guilty plea, even before sentencing. United States v. Rios-Ortiz, 830 F.2d 1067 (9th Cir.1987). Rather, a defendant bears the burden of demonstrating to the district court's satisfaction that a "fair and just reason" supports his request to withdraw. Fed. R. Crim. P. 32(d); United States v. DeFreitas, 865 F.2d 80, 82 (4th Cir.1989); United States v. Haley, 784 F.2d 1218, 1219 (4th Cir.1986). The determination is entrusted to the discretion of the district court.

Courts typically consider a variety of factors in determining whether a defendant has met his burden under Rule 32(d). The factors include (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it

will inconvenience the court and waste judicial resources.  <u>United States v. Moore</u>, 931 F.2d.245 (4th Cir. 1991).

Carl Dodson submits that he presented sufficient evidence at the numerous hearings to meet all the *Moore* factors.  As such, the district court erred in denying his motion to withdraw his plea.  A detailed argument follows.

# ARGUMENT

# I.

## THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING CARL DODSON'S MOTION TO WITHDRAW HIS GUILTY PLEA

Carl Dodson submits that he presented sufficient evidence at the numerous hearings before the district court to meet all the "fair and just reasons" set forth in United States v. Moore, 931 F.2d.245 (4th Cir. 1991) to mandate the withdrawal of his plea. As such, the district court abused its discretion in denying his motion to withdraw his plea.

### Standard of Review

Rule 32(d) of the Federal Rules of Criminal Procedure provides that a court may permit withdrawal of a guilty plea if the motion is made before sentencing and if the defendant establishes any "fair and just reason" for withdrawal of the plea. The action of a district judge on a motion to withdraw a plea "is reviewed upon appeal under an abuse of discretion standard." United States v. Ubakanma, 215 F.3d.421 (4th Cir. 2000); United States v. Pitino, 887 F.2d 42, 46 (4th Cir. 1989). The district court's factual findings in support of its decision to deny the motion will be overturned only if clearly erroneous. *See* United States v. Suter, 755 F.2d 523, 525 (7th Cir.), cert. denied, 471 U.S. 1103 (1985).

To withdraw a guilty plea based on ineffective assistance of counsel, a number of factors must be met.   "Fair and just reason" is determined in 6 factors listed in <u>United States v. Moore</u>, 931 F.2d.245 (4th Cir. 1991).

### A.   Factor One

### CARL DODSON'S PLEA WAS NEITHER KNOWING NOR VOLUNTARY

In <u>Johnson v. Zerbst</u>, 304 U.S. 458, 465, (1938), the Supreme Court found that the "purpose of a constitutional guarantee of a right to counsel is to protect the accused from conviction resulting from his own ignorance of his legal and constitutional rights."   Without consulting all potential leads, including doctors who verified Dobson's medical condition, evidence presented by Dodson, and testimony from individuals who knew Dodson, Dillon could not be certain that his counsel to plead guilty was most appropriate.

According to the defendant's testimony, he entered his plea solely based upon his attorney's recommendations, and even at the eleventh hour, Dodson sought to contest the factual basis of the plea.  JA 34-7-349  As Carl Dodson had never been involved with criminal proceedings, he relied completely upon his counsel's advice and implicitly trusted that advice.   Unfortunately for him, his counsel did nothing to thoroughly evaluate and analyze the pros and cons of pleading guilty versus proceeding to trial.  By his own admission, Dillon NEVER INVESTIGATED ANY THE EVIDENCE PRESENTED BY HIS CLIENT IN

16

SUPPORT OF HIS INNOCENCE.  JA 336-340  As more fully discussed below, the advice given to Dodson to plead guilty and stand silent at the plea hearing because "he would never see the light of day" was not based upon an informed, diligent and thorough analysis of the defenses presented to him by his client. Rather, Dillon's advice was based upon a rushed and panicked decision to enter a plea because Dillon was NOT prepared to proceed to trial.   Under these circumstances, Dodson should not be held to his plea.

## B.   Factor Two

### CARL DODSON CREDIBLY ASSERTED HIS INNOCENCE

Carl Dodson may have erroneously pleaded guilty on the basis of his counsel's inadequate analysis of the case.  However, there is no question that the record is replete with Dodson's assertions of his innocence.  JA 347-349, 425-427. Dodson has done nothing but assert his innocence, first to his attorney, second, to Mark McKee, and third, to a number of attorneys and organizations he tried to contact when his own attorney failed to return his calls during the months of his representation.   Dodson has REPEATEDLY MAINTAINED that he is innocent of the charges.   After receiving new guidance from a different attorney, he finally received a thorough analysis of this case and was given a thorough explanation of the process.   This ultimately lead to current counsel filing a motion withdraw Dodson's plea.  Why should Carl Dodson be refused the ability to withdraw a plea

17

when his former counsel clearly DID NOT CONDUCT ANY INVESTIGATION into Dodson's defense, then formulated a completely misguided and clearly baseless opinion that there was no defense? Carl Dodson is innocent, has proclaimed his innocence from the onset of this case, and continues to do so.

### C.  Factor Three

**THE DELAY BETWEEN THE ENTRY OF THE PLEA AND THE MOTION TO WITHDRAW THE PLEA WAS DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL**

Dodson entered his plea on October 8, 2008, and moved for a withdrawal of the same on January 20, 2009, a difference of 104 days, which, as the prosecution noted, correlated with his wife's sentencing. JA 195. The prosecution and even the Court were under the assumption that the motivating factor for Dodson's motion to withdraw his plea came as a result of his wife's sentence. Both pointed to the timing of Dodson's motion and his wife's sentencing as evidence in support thereof. JA 165-167. However, the record clearly refutes this erroneous assumption as Dodson expressed his innocence and discontent with his counsel to his probation officer, Mark McKee ("McKee"), on November 6, 2008, 31 days after he filed the plea agreement. "He said, him and his wife were innocent and that they took the plea because the attorneys told him and his wife there was no difference to the conspiracy. He indicated his attorneys wouldn't listen to him…'" JA 456. From October through December 2008, Dodson also extensively

18

contacted various attorneys and organizations, including the Office of Disciplinary Counsel on November 18, 2008, the ACLU that December, and the West Virginia Innocence Project in January voicing the same concerns. JA 427-429.

Both the Court and the government were wrong in their assumption that it was only due to the sentence his wife received that Dodson had a change of heart. The record is replete with instances of Dodson professing his innocence. There is no question that Dodson tried immediately and continuously to get someone to withdraw his plea, including his own counsel. Unfortunately, no one would do so for him until January 21, 2009.

### D.   Fourth Factor

### CARL DODSON WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL

The fourth *Moore* factor is whether the defendant had close assistance of competent counsel. The Government takes the position that Carl Dodson received effective assistance of counsel and hangs its entire argument on the plea colloquy. All despite an admission that they were "…not party to much of the relationship between the two of them." J.A. 36. The issue for this court is whether Wells Dillon failed to provide effective assistance of counsel to Carl Dodson when he advised him to plead guilty to count 50 of his indictment.

Wells Dillon failed to provide effective assistance of counsel to Carl Dodson. In order for Dodson to have a thorough understanding of court

19

proceedings, Dillon would have had to follow up on the defenses provided to him by his client.  Most importantly, Dillon had an obligation to pursue the defenses presented to him by his client, THEN make a decision as to whether a plea was the most viable alternative for his client.

WELLS DILLON DID NOTHING.  As is evidenced by little to no documentation of correspondence with Dodson, neglecting to keep him informed of the case proceedings and status, neglecting to even partially investigate and fully utilize potential evidence provided by his client (including evidence provided by Dodson's physician concerning his prescription pseudoephedrine medication), Dillon clearly failed his client miserably.  Dillon's billing statement reflects meeting with Dodson after the was retained outside of court no more than three (3) times: once on August 20, 2008 for a conference lasting 1.3 hours, the second time on October 5, 2008 for another conference and preparation lasting 1.2 hours, and the final time on October 7, 2008, which Dillon claims lasted "several hours," yet the record lists 0.7 hours, during which Dodson signed his plea agreement.  All other correspondence was in telephone calls, relayed through or mailed from a secretary.  By keeping insufficient records of correspondence and choosing to completely neglect relevant evidence, Dillon failed to accurately analyze the evidence and how it would translate before a jury.  He failed to inform his client about the reasoning and consequences of his plea.  Thus, Dodson's coerced

decision into entering a plea at the eleventh hour was ignorantly based on his counsel's unknowing and fact less opinion. Dillon could not in any way, shape or form, competently advise his client of the consequences of entering a plea versus proceeding to trial when DILLON MADE ABSOLUTELY NO ATTEMPT TO LOOK INTO OR INVESTIGATE HIS CLIENT'S DEFENSE.

Dodson's guilt rested on the issue of whether Carl Dodson knowingly left his pseudoephedrine medication for his Lyme's disease for a contractor to access, use and manufacture pseudoephedrine. His position has and always will be that he did not do so.

Dodson was a resident of Doddridge County, was unemployed after the close of his bar business and on disability for Lyme disease, severe back pain, depression, and bipolar disorder. He was instructed to take pseudoephedrine to help treat the symptoms of Lyme disease.

During the period of time that the bar was open, Dodson had many renovations done, including remodeling the men's bathroom, the bar itself, and stripping the hardwood floor of the bar. Gale King, a rumored methamphetamine user, had access to the bar, including the room where Carl kept his Sudafed.

Dodson, educated to the 12th grade, had no knowledge of criminal procedure when he was charged with 24 counts of Conspiracy to Manufacture a Controlled

Substance, Manufacture of a Controlled Substance, and Intent to Sell, Distribute, or Dispense Methamphetamine.

Wells Dillon began representing Dodson on August 21, 2008. Dillon admits that when he compiled his case he relied solely on interviewing Dodson and his wife, and having a list of potential witnesses, relying more on the Government's testimony to determine whether a trial would result in conviction. His records show that he met with Dodson only three times out of court for a total of 3.2 hours to discuss proceedings and advise Dodson. After pleading guilty on October 8, 2008 to count 50 as advised by Mr. Dillon, Dodson asserted his innocence and reinforced his statements with evidence including witness testimony to his probation officer Mark McKee on November 6, 2008. Dodson had shown the testimony to his attorney previously, but Dillon had not considered it when building Dodson's case.

The government argues that because Dodson's knew what his plea was and that he voluntarily gave it, he should be held accountable for it. They fail to address the circumstances in which Dodson was counseled to plead guilty. Wells Dillon has NO PROOF that contact with his client exceeded court appearances and what was recorded in his billing statements. Wells Dillon had NEVER met any of the witnesses that Dodson compiled for him to examine, and, as a result failed to consider alternative possibilities and explanations for Dodson's case. How can

Dodson possibly be held accountable for a plea without any 1) personal history of legal education, and 2) proper defense from careful consideration of all possible aspects of the case?

Dodson is ignorant of court procedure and made a mistake in following the advice of his attorney. Although Dodson testified that he knew where he was and what he was doing in court, J.A. 82, equal amounts of evidence point to Dodson lacking the knowledge of what that plea meant, insistence upon his innocence, and misunderstanding of why he was pleading. Essentially, Dodson didn't understand what he didn't understand, and should be allowed to assert his constitutional right to fair trial with adequate knowledge of legal procedure provided by his current attorney. Dodson is innocent and if anyone should be held accountable for Dodson's mistaken plea, it should be Dillon, who ineffectively counseled Dodson to plea.

Wells Dillon was provided a list of witnesses, information, and relevant evidence for Carl Dodson that he disregarded. The evidence Dodson gave him would account for the presence of the suspicious materials in Dodson's bar and dumpster, his prescription medication, traffic and activity at the bar, Dodson's general character, and responses to other allegations. Dillon admits that when he compiled his case he relied solely on interviewing Dodson and his wife, and having a list of potential witnesses, relying more on the Government's testimony to

form a defense. His billing records show that he met with Dodson only three times out of court for a total of 3.2 hours to discuss proceedings and advise Dodson. The Court itself has acceded that, in light of all of the evidence mentioned that Dillon did not investigate, "there is reasonable belief to believe they were credible witnesses [that] would contradict Mr. King and the Government's other witnesses," and, "maybe a jury would have believed it." JA 482. Wells Dillon failed to compile all of the materials into a proper defense and merely used the Government's evidence, some pictures, and a list of witnesses that he hadn't interviewed.

Despite all of this, the Court refused Dodson's motion to withdraw his guilty plea. Dodson has yet to find out if the entirety of the facts for his case will ever make it to trial or if he will remain in prison for a crime that he did not commit.

### E.   Factor Five

**ALLOWING CARL DODSON TO WITHDRAW HIS PLEA WOULD NOT HAVE RESULTED IN PREJUDICE TO THE GOVERNMENT**

Prejudice to the government only exists when a large amount of time has passed such that witnesses' memories fade or evidence is lost or destroyed. The Conspiracy charged in this case allegedly began in November, 2006 and allegedly continued until the date of the Indictment on or about July 1, 2008. The period of time which has lapsed since November, 2006 is only a mere 33 months. It has

only been approximately one year since the Indictment was returned. The government can cite to no prejudice which outweighs Dodson's innocence.

### F.   Factor Six

### ALLOWING CARL DODSON TO WITHDRAW HIS PLEA WOULD NEITHER INCONVENIENCE THE COURT NOR WASTE ITS JUDICIAL RESOURCES

Factor number six considers whether withdrawal will inconvenience the Court and waste judicial resources. Allowing a defendant to assert his constitutional rights and specifically allowing Dodson to withdraw his plea and be given the opportunity to a fair trial based upon ineffective assistance of counsel should never be considered a waste of judicial resources.

Throughout his legal proceedings, all Carl Dodson wanted was to have "…a fair chance." JA 191.  Wells Dillon testified that up until he signed the plea agreement, "Mr. Dodson was adamant that he wanted to go to trial." JA 328. Probation officer Mark McKee testified that Dodson maintained his innocence even after he signed his plea agreement. JA 455-456.

Carl Dodson believes in his own innocence, and only signed a plea agreement because he was following his former attorney's orders and thought he understood the proceedings.  Claiming knowledge of procedure when one believes he has knowledge of procedure, and refuting the claim after realization of ignorance cannot disqualify someone from the due process that he rightly deserves.

Refusing him the opportunity for a fair trial with new counsel will result in the incarceration of an innocent man.

Dodson's right to due process and adequate representation should certainly justify and even require any sacrifice of judicial time and resources.

## CONCLUSION

The arguments set forth above support a reversal of the district court's denial of Dodson's Motion to Withdraw his guilty plea and justice requires that Dodson be given his constitutional right to a fair trial.

## REQUEST FOR ORAL ARGUMENT

Carl Edward Dodson respectfully requests oral argument before the court.

Respectfully submitted,

/s/ Elgine Heceta McArdle
Elgine Heceta McArdle
MCARDLE LAW OFFICE
80 Twelfth St., Suite 206
Wheeling, WV 26003
W.Va. State Bar I.D. #6249
304-232-0700

Attorney for
CARL EDWARD DODSON

27

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this Appellant's reply brief contains 5,342 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 Times New Roman.

/s/ Elgine H.McArdle
Elgine Heceta McArdle
Counsel for Appellant

Dated: August 20, 2009

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on August 20, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Shawn A. Morgan
> OFFICE OF THE U.S. ATTORNEY
> Clarksburg Federal Center
> 320 West Pike Street
> Clarksburg, WV 26301-2710
> (304) 623-7030
>
> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

> /s/ Laura C. Bunton
> Laura C. Bunton
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street, Suite 230
> Richmond, VA  23219